# Affidavit

**THE UNITED STATES DISTRICT COURT OF THE DISTRICT OF ALASKA**
Case No. 3:21-cv-00272-TMB

STATE OF NORTH CAROLINA
COUNTY OF _____

The undersigned, GARY STROMBERG, being duly sworn, hereby deposes and says:

1. I am over the age of 18 and am a resident of the State of North Carolina. I have personal knowledge of the facts herein, and, if called as a witness, could testify completely thereto.

2. I suffer no legal disabilities and have personal knowledge of the facts set forth below.

## ANSWER TO CIVIL ACTION NO. 3:21-CV-00272-TMB ALASKA WOMEN'S HEALTH, PC VS. GARY J. STROMBERG

The DEFENDANT will respond to each accusation based on it's specific arrangement in the document. In short, it is a frivolous lawsuit intended to harm the DEFENDANT personally through contrived character assassination with the goal to avoid countersuit on multiple fronts of which the DEFENDANT is likely to be successful. The DEFENDANT is also protected by multiple Whistleblower Laws and this lawsuit is, and will be perceived as, an attempt at retribution which can bring significant consequences in the realm of the law and public opinion. Hence, the concepts of extortion, theft, etc are active attempts by the PLAINTIFF to continue to harm and silence the DEFENDANT with regards to items noted in the concluding statements.

## RESPONSE TO PLAINTIFF ACCUSATIONS

Section 12 and 13

DEFENDANT utilized the company credit card within company policy and at no time was the DEFENDANT counseled, verbally or in written format, with regards to any misuse. There are no documents which prove such counseling. In addition, all utilization was within SOX and GAAP guidance to include timely reimbursement through AWH processes for any personal utilization. DEFENDANT signed all documents presented by the Finance Manager for reimbursement upon the next payroll period. IF the DEFENDANT was operating outside of policy, the Finance Manager failed to notify the DEFENDANT and the MANAGING PARTNERS immediately. However, no fault existed as DEFENDANT religiously reimbursed the PLAINTIFF through AWH processes. In fact, PLAINTIFF benefited through the increased reception of Alaska Air Miles through its utilization.

Section 14 and 15

This is a RocketLawyer.com document.

Categorically denied and not germane to the PLAINTIFF suit. The American Legion is a charitable organization which gains its assistance through service provision, charitable events, and legal gaming activity. Each officer of AWH was granted $1,000 by a Board Action towards the charity of the officer's choice. DEFENDANT'S choice was the American Legion. The Finance Manager was also notified that 4 installments of $250.00 would be presented to the Legion. The remaining $250.00 totalling $500.00 were assumed by the DEFENDANT as personal contributions and subsequently reimbursed to PLAINTIFF through standard process as noted in all finance documents. In addition, the PLAINTIFF also debited $1,000.00 from the DEFENDANT'S termination check without notice or approval from DEFENDANT. The DEFENDANT did not benefit from the contributions. However, the PLAINTIFF was made totally whole to its benefit through internal processes.

Section 19

Categorically denied. Allegation is not germane to the PLAINTIFF suit or to the termination argument as was identified post termination nor is there any disciplinary, formal or informal, evidence of the DEFENDANT presenting to the workplace under the influence of any substance.

Section 20

Categorically denied. Allegation is not germane to the PLAINTIFF suit to the termination argument as was identified post termination nor is there any disciplinary, formal or informal, with regards to such. In fact, if PLAINTIFF accessed the DEFENDANT'S personal email it is undiscoverable and was gained without permission and illegal.

Section 21, 22, 23, 24, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39

The PLAINTIFF accusation is categorically denied. It was typical for the DEFENDANT to download copies of financials and other documents to allow the DEFENDANT to work remotely due to travel and/or COVID-19 quarantines etc. In addition, respective documents are also in possession of multiple AWH managers and employees on personal devices. These documents were always used for business purposes and all documents have been subsequently deleted post separation. When the DEFENDANT references such documents, he intended to reference the documents such as evaluations and the reference towards the financial documents was to remind the PLAINTIFF of his exceptional performance in the position to the benefit of the PLAINTIFF.

With regard to the DEFENDANT'S statement regarding the media and Providence Hospital, he is referencing the Right to Inform as provided by Whistleblower Protections; Harm to Health; Harassment; and Wrongful Termination as discussed in the Concluding Statements of this submission.

The DEFENDANT seeks in no way to harm the PLAINTIFF unnecessarily and only seeks to achieve satisfactory and reasonable compensation for damages. This is confirmed by the DEFENDANT'S offer to allow payment of damages over a 12 month period as to not unduly affect PLAINTIFF cash flow processes. There is no intent to "extort" the PLAINTIFF. Again, the

This is a RocketLawyer.com document.

PLAINTIFF has made no effort to negotiate a reasonable settlement and has left the DEFENDANT with few options for satisfaction.

## DEFENDANT CONCLUDING STATEMENTS/COUNTER ALLEGATIONS

<u>Wrongful Termination/Hostile Workplace</u>

Clearly, as documented in multitudes of emails and conversations, MANAGING PARTNER, Dr. Amanda Beery intently acted to obstruct the DEFENDANT from completing his job obligations to its fullest extent due to overt and covert attempts to strategize with other discontented employees, primarily the HR/Finance Manager, Melissa Schmidt, to harm the DEFENDANT professionally and personally. Ms. Schmidt made numerous references to her desire and intent, "to sabotage" the DEFENDANT after it was clearly defined that Ms. Schmidt was not competent to hold the position. Ms. Schmidt has also continued to provide personal information, against policy and a signed termination document, to lenders and potential employers. This is also a reason for Ms. Schmidt's termination which is only obstructed by the intended narrative and goal to harm the DEFENDANT.

Much of this assessment is based on Ms. Schmidt's clear incompetence regarding finance understanding, Medicare regulation and data submission, and Ms. Schmidt's significant misutilization of PMI (Personal Medical Information). As the DEFENDANT is protected by multiple Whistleblower Protection Laws on these items and other potential Stark Law Violations, DEFENDANT reserves the right to report such due to this frivolous action and to seek out further protections. Ms. Schmidt placed the PLAINTIFF at risk of a total statutory fine exceeding two million dollars. It is the DEFENDANT'S understanding that this HIPAA infraction remains unreported and is grounds for immediate termination within any other organization. Conclusively, Dr. Beery's relationship and intention to work in tandem with Ms. Schmidt is confirmed by this internal protection and lack of reporting.

In fact, prior to the DEFENDANT'S termination, a letter was written, sealed, and left on the DEFENDANT'S desk which laid out his intent to resign but was not going to be delivered to the Board until a conversation with another MANAGING PARTNER, Dr. Craig Hinkle, was able to be convened as he was out of state during the proceeding time. At no time did the DEFENDANT break PLAINTIFF policy; in addition, there is no documentation, verbal or written, of any such events, primarily as they never happened. In addition, the DEFENDANT'S performance was above standards and benefited the PLAINTIFF on multiple financial fronts and are well-documented in the business and financial records.Dr. Beery's constant and consistent harassment is well documented and was witnessed by every Board Member and Dr. Beery was also counseled by other MANAGING PARTNERS regarding her inappropriate, deceitful, and intentful actions and comments towards the DEFENDANT.

<u>Sexual Harrassment</u>

Dr. Beery's actions are also clearly in the realm of sexual harrassment. As the DEFENDANT was only one of two males, and the only heterosexual man within Executive Meetings, and Board

This is a RocketLawver.com document.

Meetings. These comments were intended to create an uncomfortable and hostile environment for the DEFENDANT. These comments again were witnessed multiple times by other managers and board members. In addition, Dr. Beery was chastised by other counterparts on multiple occasions for her lack of said professionalism regarding these normally off-color, and sexually based comments especially in our current harassment landscape. Unfortunately, this was an underlying culture of the practice and the Board itself.

Harm to Health/Pain and Suffering

Just prior to Thanksgiving 2020, the DEFENDANT was summoned to Dr. Craig Hinkle's office to discuss Dr. Hinkle's COVID antibody report from Providence Hospital. Dr. Hinkle had not been feeling well and was experiencing COVID symptoms which was evident to the balance of the PLAINTIFF practice to include other MANAGING PARTNERS. Rather than obtain a COVID test to protect his patients and coworkers from serious infection as it was the first strain of the disease and no vaccine was yet available, Dr. Hinkle chose to continue to practice.

Dr. Hinkle did choose to get an antibody test which appears to be an intentional circumvention of the Providence Hospital Physician Practice Requirements during that time. Post the DEFENDANT'S meeting with Dr. Hinkle, after he verbalized his documented positive result for the antibody, the DEFENDANT tested positive and became very ill and continues to experience significant effects from the disease today. The DEFENDANT had no other potential encounters at that time other than Dr. Hinkle who knowingly was positive upon the meeting summons. The DEFENDANT'S positive result is maintained with the HR department at the PLAINTIFF. In fact, Dr. Carol Mitchell-Springer, a MANAGING PARTNER at the time, inquired with the DEFENDANT directly on whether he "thought that you were infected by Craig?" DEFENDANT answered in the affirmative, with an immediate yes.

This also caused the DEFENDANT to miss a number of days of work for which is believed is also a reason that he was terminated from the PLAINTIFF. Dr. Hinkle should be required to notify Providence Hospital and any patients during that infection period.

The DEFENDANT'S recommendation and interest for receipt of a sum of one year's pay is a part of this discussion due to loss of health, loss of employment, and pain and suffering. This sum will now be renegotiated with the PLAINTIFF and their counsel but additional litigation will occur going forward if required. The DEFENDANT'S interest is not litigation but it is to negotiate a reasonable agreement and limit the use of the court's valuable time. The PLAINTIFF has made no effort to contact the DEFENDANT to seek such negotiation.

## REQUEST FOR RELIEF

In an effort to provide for reasonable compensation for harm experienced professionally and personally due to the stated PLAINTIFF Failures, the following satisfactions are requested to be ordered to the PLAINTIFF by the court in absence of any external negotiation between the parties. An order to negotiate would be acceptable to this DEFENDANT.

This is a RocketLawyer.com document.

1. $140,000 as satisfaction of loss of employment and salary for 1 year for Wrongful Termination/Hostile Workplace. Public information and experience CONFIRM that it generally requires one month of recruitment process for every 10k over 100k salary. The DEFENDANT haS been without reasonable replacement employment for 6 months.

2. $100,000 as satisfaction for Sexual Harrassment purpatrated by a MANAGING PARTNER of the Practice, Dr. Amanda Beery, and PRACTICE et.al.

3. $100,000 as satisfaction for Harm to Health and Pain and Suffering. The DEFENDANT continues to experience direct and psychological harm due to long term COVID illness caused by the irresponsible decision making of a MANAGING PARTNER, licensed in the State of Alaska, Dr. Craig Hinkle.

Again, it is not the DEFENDANT'S intention to unnecessarily harm the PLAINTIFF, threaten the PLAINTIFF, or frivolously utilize court resources. The sole intent is to come to a negotiated arrangement to reimburse the DEFENDANT for harm assigned to the actions of the PLAINTIFF.

The DEFENDANT welcomes the determination of all the above facts through JURY BY TRIAL should a negotiated agreement between the parties prove to be unsuccessful.

I hereby certify that a copy of the above, AFFIDAVIT was mailed, first class, U.S. mail AND per digital format, to Stephen D. Rose, Hall, Render, Killian, Heath & Lyman, LLC, 1049 West Fifth Avenue, Suite 200 AND Peter Sandberg, Ingaldson Fitzgerald,, 813 West Third Avenue, Anchorage, AK 99501 on March 28th, 2022.

I declare that, to the best of my knowledge and belief, the information herein is true, correct, and complete.

Executed this __29__ day of __March__, 20__22__.

_(signature)_
Gary Stromberg

This is a RocketLawyer.com document.

# NOTARY ACKNOWLEDGMENT

STATE OF NORTH CAROLINA, COUNTY OF __Buncombe__, ss:

On this __29__ day of __March__, __2022__, before me, __Cheryl Parks__ _____, personally appeared Gary Stromberg, known to me (or satisfactorily proven) to be the persons whose names are subscribed to the within Affidavit, and, being first duly sworn on oath according to law, deposes and says that he/she has read the foregoing Affidavit subscribed by him/her, and that the matters stated herein are true to the best of his/her information, knowledge and belief.

In witness whereof I hereunto set my hand and official seal.

_Cheryl Parks_
Notary Public

_Notary_
Title (and Rank)

My commission expires __08/13/2025__

```
CHERYL PARKS
NOTARY PUBLIC
Buncombe County
North Carolina
My Commission Expires Aug. 13, 2025
```

This is a RocketLawyer.com document.

**From:** Stromberg
73 David Creek Rd
Candler, NC 28715



ReadyPost
Document Mailer

99513-750404

**To:** US District Court
Clerks Office
222 W. 7th Ave, #4
Anchorage, AK 99513

U.S. POSTAGE PAID
FCM LETTER
CANDLER, NC
28715
MAR 29, 22
AMOUNT
$0.78
R2304E106307-09